# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ALAN DONNELL BROADNAX,

Defendant-Appellant.

UNPUBLISHED
April 10, 2018

No. 333205
Oakland Circuit Court
LC No. 2015-256491-FC

Before: SERVITTO, P.J., and MARKEY and O'CONNELL, JJ.

PER CURIAM.

Defendant, Alan Broadnax, appeals as of right his jury conviction of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(f) (sexual penetration accomplished by force or coercion and causing personal injury). The trial court sentenced Broadnax as a fourth-offense habitual offender, MCL 769.12(1)(b), to a prison term of 25 to 75 years. We affirm.

## I. BACKGROUND

In January 2008, the victim went to a party with her friend, Heather, and two other men the victim did not know. The group picked up the victim at her home in Hamtramck, and they drove to a house about 30 minutes away. Later that evening, Heather got a ride home with another friend, Cheryl, leaving the victim alone at the house with three men she did not know. According to the victim, she was physically assaulted and knocked unconscious. When she woke up, Broadnax was sexually assaulting her. The victim claimed that, after the assault, one of the other men gave her some of her belongings and escorted her out of the house. The victim described walking through the night in sub-freezing temperatures to her home in Hamtramck, wearing no jacket or shoes. When she arrived home, she contacted the Hamtramck police to report the assault. The police took her to the hospital for treatment and for the collection of forensic evidence. Because the Hamtramck police believed the sexual assault occurred at a house in Southfield, they turned the matter over to the Southfield police.

After the victim's release from the hospital, a Southfield police officer spoke with the victim and attempted to determine the location of the house where she was assaulted. The officer believed that the offense occurred in Detroit, so the Southfield police referred the matter to the Detroit police. However, Detroit officers believed that the offense occurred in Southfield. The case languished for years because of the jurisdictional question and delays in processing a rape kit collected at the hospital. After funding for forensic testing was made available in 2013,

-1-

the samples collected from the victim were analyzed. The results were entered in a DNA database, which matched Broadnax's DNA. Additional testing of Broadnax's DNA confirmed the match. The victim also identified Broadnax's photograph in a photographic array.

## II. ANALYSIS

### A. SUFFICIENCY OF THE EVIDENCE

Broadnax argues that the evidence was insufficient to establish either his guilt of CSC-I or the location of the offense in Oakland County. An appellate court's review of the sufficiency of the evidence to sustain a conviction turns on whether there was sufficient evidence to justify a rational trier of fact in finding the defendant guilty beyond a reasonable doubt. *People v Johnson*, 460 Mich 720, 722-723; 597 NW2d 73 (1999). We must review the evidence in a light most favorable to the prosecution. *Id*. at 723. The credibility of witnesses and the weight afforded their testimony are matters for the jury, and any conflicts in the evidence must be decided in favor of the prosecution. *People v Jackson,* 292 Mich App 583, 587-588; 808 NW2d 541 (2011). "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Williams,* 268 Mich App 416, 419; 707 NW2d 624 (2005).

Broadnax disputes that venue was proper in Oakland County. Although the location of the offense was a disputed issue, the prosecution presented evidence establishing that the victim was sexually assaulted at a house in Southfield, which is in Oakland County. Even if venue in Oakland County were improper, Broadnax would not be entitled to relief. Venue is not an essential element of a charged offense, and there is no constitutional right to be tried in a county where a crime occurred. *People v Houthoofd*, 487 Mich 568, 586-588; 790 NW2d 315 (2010). Moreover, "[n]o order, judgment, or decree shall be void or voidable solely on the ground that there was improper venue." MCL 600.1645.[1] Accordingly, Broadnax cannot obtain relief on the basis that the prosecution failed to prove venue in Oakland County beyond a reasonable doubt.

The prosecution also presented sufficient evidence to support Broadnax's conviction of CSC-I. A conviction under MCL 750.520b(1)(f) requires proof that "the actor (1) causes personal injury to the victim, (2) engages in sexual penetration with the victim, and (3) uses force or coercion to accomplish the sexual penetration." *People v Nickens*, 470 Mich 622, 629; 685 NW2d 657 (2004). The victim's testimony, which was corroborated by DNA evidence, was sufficient to establish sexual penetration by Broadnax. The victim denied consenting to the sexual contact. She testified that she woke up and discovered that Broadnax was sexually assaulting her by penetrating her vagina with his penis while holding her down on the floor. When she tried to speak, Broadnax hit and choked her and told her, "Shut up bitch or I'll kill you." After the assault, she had bruising on her neck, face, and right elbow in addition to a "ring-like bruise over her neck." Her left eye was black and blue, and her lip was swollen. This

---

[1] In *Houthoofd*, 487 Mich at 592, our Supreme Court held that "the early Michigan caselaw requiring that a conviction be reversed and the case remanded for a new trial because of improper venue has been abrogated by statute and is no longer applicable."

testimony was sufficient to prove that Broadnax accomplished the penetration by force and that the victim was injured during the sexual assault. The victim identified Broadnax as her attacker, and Broadnax's identity was confirmed by DNA testing. Accordingly, the evidence was sufficient to support Broadnax's conviction of CSC-I beyond a reasonable doubt.

To the extent that the victim's multiple accounts since 2008 were inconsistent, the credibility of her testimony was a matter for the jury to resolve. The credibility or plausibility of the victim's account of walking through the night from Southfield to Hamtramck, wearing no shoes or jacket, was also a matter for the jury to determine. Moreover, a "jury has the right to disregard all or part of the testimony of a witness." *People v Goodchild*, 68 Mich App 226, 235; 242 NW2d 465 (1976). The jury was free to believe the victim's account of the sexual assault even if it did not believe her account of how she got home after the assault. Broadnax's attacks on the victim's credibility do not render the evidence insufficient to support his conviction.

## B. JUDICIAL FACT-FINDING

Next, Broadnax argues that he is entitled to sentencing relief under *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), because the trial court engaged in judicial fact-finding to score offense variables (OVs) 4 and 7 of the sentencing guidelines. We disagree. In *Lockridge*, our Supreme Court held that Michigan's sentencing guidelines are constitutionally deficient, in violation of the Sixth Amendment right to a jury trial, to the extent that they "*require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range . . . ." *Lockridge*, 498 Mich at 364. To remedy this deficiency, the Court held that the guidelines are advisory only. *Id*. at 365. Trial courts are still required to "consult the applicable guidelines range and take it into account when imposing a sentence." Id. at 392. Courts are permitted to score the OVs using judge-found facts. *Id.* at 392 n 28. As this Court explained in *People v Biddles*, 316 Mich App 148, 158; 896 NW2d 461 (2016), the *Lockridge* Court was not concerned about judicial fact-finding "in and of itself," but "judicial fact-finding in conjunction with *required* application of those found facts for purposes of increasing a *mandatory* minimum sentence range . . . ." To remedy the violation of a defendant's Sixth Amendment right in cases that predated *Lockridge*, the Court adopted a remand procedure modeled after the procedure in *United States v Crosby*, 397 F3d 103 (CA 2, 2005). *Lockridge*, 498 Mich at 395-397.

In this case, the trial court sentenced Broadnax almost 10 months after *Lockridge* was decided. "*Crosby* remands are warranted only in cases involving sentences imposed on or before July 29, 2015, the date of [the *Lockridge*] decision." *Lockridge*, 498 Mich at 397. Because the Supreme Court's decision in *Lockridge* rendered the guidelines advisory, and because the trial court sentenced Broadnax after *Lockridge* was decided, the trial court was permitted to score the guidelines on the basis of judge-found facts without violating Broadnax's Sixth Amendment right to a jury trial. Therefore, there is no merit to Broadnax's argument that the trial court erred by engaging in judicial fact-finding to score the guidelines.

## C. BROADNAX'S STANDARD 4 BRIEF

Broadnax raises several additional issues in a pro se supplemental brief, filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4.

## 1. INEFFECTIVE ASSISTANCE OF COUNSEL

Broadnax raises numerous claims of ineffective assistance of counsel. Because Broadnax did not preserve these claims, "our review is limited to errors apparent on the record." See *People v Matuszak,* 263 Mich App 42, 48; 687 NW2d 342 (2004). To establish ineffective assistance of counsel, "a defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced the defendant as to deprive him of a fair trial." *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). The "defendant must overcome the strong presumption that counsel's challenged actions were sound trial strategy." *People v Cooper*, 309 Mich App 74, 80; 867 NW2d 452 (2015). To establish prejudice, "the defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result would have been different." *People v Johnson*, 451 Mich 115, 124; 545 NW2d 637 (1996). The burden is on the defendant to establish factual support for his claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Broadnax argues that defense counsel erroneously advised him that he was subject to a mandatory 25-year minimum sentence under MCL 769.12(1)(a) as a fourth-offense habitual offender, which affected his decisions throughout this case. Consequently, Broadnax argues, he waived his right to testify, so he was prevented from presenting a defense of consent.

The prosecution originally charged Broadnax as a "super" habitual offender under MCL 769.12(1)(a), which establishes a mandatory minimum sentence of 25 years upon conviction. At sentencing, the prosecution agreed that Broadnax was not subject to this penalty because the statutory provision was enacted after the date of the charged offense. However, Broadnax still qualified as a fourth-offense habitual offender under MCL 769.12(1)(b). Although Broadnax was not subject to a *mandatory* 25-year minimum sentence upon conviction, he remained subject to sentence enhancement as a fourth-offense habitual offender upon conviction, which still exposed him to a minimum sentence of 25 years or more. Moreover, a 25-year sentence fell within the sentencing guidelines range of 171 to 570 months scored for Broadnax's conviction.

At sentencing, Broadnax explained that he elected not to testify because of the possibility that the prosecution would introduce evidence of a prior charged sexual assault from several years earlier to impeach his claim that any sexual contact with the victim was consensual. Broadnax did not state that his understanding of the possible penalty he faced upon conviction influenced his decision not to testify. Similarly, although Broadnax's affidavit states that counsel advised him that he would be subject to a minimum sentence of 25 years if convicted, the affidavit does not indicate whether counsel advised him that such a sentence would be mandatory. Even if penalty concerns influenced Broadnax's decision not to testify, those concerns would still have existed regardless of the applicability of the mandatory penalty under MCL 769.12(1)(a) because Broadnax would have remained at substantial risk of receiving a minimum sentence of 25 years or more if convicted. Under these circumstances, Broadnax has not established a reasonable probability that counsel's advice affected his decision to testify.

Broadnax next argues that defense counsel was ineffective for not challenging the trial court's ruling to allow the prosecution to present evidence of a prior charge of sexual assault as "other acts" evidence under MRE 404(b)(1). The trial court never ruled that this evidence could be admitted under MRE 404(b)(1), however. The prosecution filed a motion to admit this

-4-

evidence under MRE 404(b)(1), and defense counsel opposed the motion. The trial court denied the prosecution's motion to admit the evidence in its case-in-chief, but it reserved ruling on the admissibility of the evidence to rebut a consent defense if Broadnax chose to testify. In sum, defense counsel challenged the admissibility of the evidence under MRE 404(b)(1) and successfully obtained a ruling prohibiting the prosecution from offering the evidence under that rule in its case-in-chief. Although the trial court agreed to revisit its decision if Broadnax elected to testify and present a defense of consent, Broadnax did not testify, and the court was not asked to revisit its decision. The evidence was never admitted. Therefore, there is no basis for concluding that defense counsel's performance on this issue was deficient.

Broadnax complains that consent was not raised as a defense. The decision whether to have Broadnax testify in support of a defense of consent was a matter of trial strategy. "A defendant's decision whether to testify on his own behalf is an integral element of trial strategy." *People v Toma*, 462 Mich 281, 304; 613 NW2d 694 (2000). "[T]his Court will not second-guess counsel regarding matters of trial strategy" and "will not assess counsel's competence with the benefit of hindsight." *People v Rice (On Remand)*, 235 Mich App 429, 445; 597 NW2d 843 (1999). If Broadnax had elected to testify in support of a consent defense, it risked opening the door to allowing the prosecution to offer evidence of a previous sexual assault committed by Broadnax. Broadnax has not overcome the presumption that the strategy of foregoing a consent defense and instead focusing on attacking the credibility and reliability of the victim's testimony was unreasonable, especially considering the inconsistencies about various details of the victim's account and the seeming implausibility of the victim's account of walking home from Southfield to Hamtramck in sub-freezing temperatures with no shoes or jacket.

Broadnax argues that defense counsel was ineffective for failing to take advantage of all opportunities to impeach the victim's testimony. Counsel's decisions regarding what evidence to present and how to question witnesses are matters of trial strategy. "[T]his Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). Broadnax must overcome the strong presumption that counsel exercised sound trial strategy. See *id*.

It is apparent from the record that defense counsel attempted to impeach the victim's testimony regarding each of the matters cited in Broadnax's argument, including her physical descriptions of the men involved, how she was able to walk home, and other details of her account. Broadnax argues that counsel could have further impeached the victim's testimony by using other witnesses' statements that were inconsistent with the victim's testimony. However, it was clear from the testimony at trial that all three women present at the party had different recollections of the events and individuals involved. Although counsel did not directly impeach the victim with these inconsistencies, he commented on them in his closing argument to argue that the victim's testimony was not credible. Broadnax has not established that counsel's decision to challenge the victim's credibility in this manner was unreasonable.

Broadnax argues that defense counsel was ineffective for not offering a defense expert to show that it would have been impossible for the victim to have walked from Southfield to Hamtramck in sub-freezing temperatures, without a jacket or shoes, without contracting hypothermia or frostbite. However, defense counsel questioned Dr. Claps about the likelihood that the victim would have suffered frostbite or hypothermia if she had walked from Southfield

to Hamtramck in the manner she described. Although Dr. Claps was unwilling to state with certainty that the victim would have suffered frostbite or hypothermia under those conditions, she agreed that the likelihood of both was high. Counsel reasonably used this testimony to argue that the victim's account of her trek home was not credible. Further, Broadnax has not submitted an offer of proof showing that another witness could have offered a different opinion. Therefore, Broadnax has not established that he was prejudiced by counsel's failure to call an expert witness.

Broadnax also argues that defense counsel was ineffective for referring to Dr. Claps as an expert in the areas of frostbite and hypothermia. Dr. Claps was a medical doctor who testified that she had experience in treating frostbite and hypothermia. Therefore, it was reasonable for defense counsel to agree that Dr. Claps was qualified to offer testimony in those areas.

Broadnax argues that defense counsel was ineffective for not objecting to Dr. Claps's testimony regarding whether the victim likely would have suffered from frostbite or hypothermia and whether she could have been knocked unconscious by a bottle in the absence of apparent bruises or marks on her head. Broadnax argues that defense counsel should have objected to this testimony as inadmissible hearsay. There is no merit to this argument. Counsel is not ineffective for failing to raise a futile objection. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). The challenged testimony involved Dr. Claps's expert opinions, which were admissible under MRE 702. The testimony did not involve the admission of any out-of-court statements, so they did not involve hearsay, as defined in MRE 801(c). Therefore, counsel was not ineffective for not objecting to this testimony.

Broadnax also complains that the prosecution offered no medical records to support the victim's claim that she had blisters and pain in her feet on the day after the assault or that she was struck in the head with a hard object, like a liquor bottle. There is no merit to this argument. The absence of medical records about these injuries did not bar the victim from offering this testimony. Instead, it was objectively reasonable for defense counsel to highlight that this testimony was *not* supported by any medical evidence. The absence of medical records to verify these aspects of the victim's testimony affected only the weight of her testimony, not its admissibility. Broadnax has not shown that counsel was ineffective in this regard.

Broadnax argues that defense counsel was ineffective for failing to object to Detective Michael Pieroni's hearsay testimony. Defense counsel agreed to allow Detective Pieroni to testify about Officer Davis's report detailing his efforts to work with the victim to find the location of the assault because Officer Davis was retired at the time of the trial. The parties expressly waived any hearsay objections to Pieroni's testimony. That decision was clearly a matter of trial strategy. Moreover, Detective Pieroni's testimony established that the victim did not identify a house in Southfield as the location of the assault; instead, she provided information suggesting a possible location in Detroit. Broadnax has not overcome the presumption that counsel's agreement that Detective Pieroni could testify to hearsay was objectively reasonable.

Broadnax also argues that defense counsel was ineffective for failing to object to portions of the prosecutor's closing argument as not supported by the evidence. We disagree. A prosecutor is afforded great latitude in closing argument. *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995). The prosecutor is permitted to argue the evidence and any reasonable

inferences that may arise from the evidence in support of the prosecution's theory of the case. *Id*. After reviewing the prosecutor's arguments, we are satisfied that the prosecutor's remarks arose from the evidence or reasonable inferences drawn from the evidence. Any objection to the prosecutor's closing argument would have been futile, so defense counsel was not ineffective for failing to object.

Broadnax next argues that defense counsel was ineffective for stipulating to the chain of custody regarding the rape kit evidence. Broadnax does not identify any evidence or other information regarding a defect in the chain of custody that could have precluded admission of this evidence. Because Broadnax has not produced any factual support for his suggestion that an objection based on the chain of custody could have been successful, this claim cannot succeed.

Broadnax argues that defense counsel was ineffective for not producing any evidence to challenge whether venue was proper in Oakland County. Throughout the case, counsel elicited testimony regarding inconsistencies in the victim's descriptions of the location of the assault. During closing argument, counsel argued that the uncertainty over the location of the assault was enough to return a not guilty verdict. Broadnax does not explain what additional evidence counsel could have offered on this issue. Therefore, Broadnax has not established ineffective assistance of counsel on this basis.

In sum, Broadnax has not established that he was denied the effective assistance of counsel at trial. Although Broadnax alternatively asks this Court to remand this case for an evidentiary hearing on his claims, he has not demonstrated that an evidentiary hearing is necessary to resolve the claims. See *People v McMillan*, 213 Mich App 134, 141-142; 539 NW2d 553 (1995). Accordingly, we deny his request for a remand.

## 2. HABITUAL OFFENDER AMENDMENT

Broadnax argues that the prosecution improperly charged him as a "super" habitual offender under MCL 769.12(1)(a) and that the proper remedy was dismissal of the habitual-offender notice in its entirety, not to continue his habitual offender status under MCL 769.12(1)(b). We disagree. Broadnax did not preserve this issue, so our review is limited to plain error affecting Broadnax's substantial rights. See *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). An error is plain if it is clear or obvious, and an error affects substantial rights if it affects the outcome or the integrity of the proceedings. *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003).

The parties agreed at sentencing that Broadnax was not subject to a 25-year mandatory minimum sentence under MCL 769.12(1)(a) because that penalty provision was adopted after the date of the charged offense. The parties further agreed that Broadnax was still subject to sentence enhancement as a "regular" habitual offender under MCL 769.12(1)(b). Generally, the prosecution is not permitted to amend the information to seek a sentence enhancement for a habitual offender if the amendment would subject the defendant to increased sentencing consequences. *People v Hornsby*, 251 Mich App 462, 472-473; 650 NW2d 700 (2002). In this case, the amendment *reduced* Broadnax's sentencing exposure by eliminating the possibility of a *mandatory* 25-year minimum sentence. Broadnax does not dispute that the habitual-offender notice was timely filed or that he otherwise qualified for sentence enhancement as a "regular"

habitual offender under MCL 769.12(1)(b). Therefore, Broadnax properly remained subject to sentence enhancement under MCL 769.12(1)(b).

Broadnax argues that the error in originally charging him under MCL 769.12(1)(a) affected his decision not to testify. As discussed earlier, Broadnax explained at sentencing that he elected not to testify out of a concern that the prosecution would introduce evidence of a prior charged sexual offense, not because of the possible penalty he faced if convicted. Even if penalty concerns influenced Broadnax's decision, Broadnax still faced the risk of receiving a minimum sentence of 25 years or more if convicted. Under these circumstances, Broadnax has not established that any misunderstanding over the applicability of MCL 769.12(1)(a) affected his substantial rights.

### 3. BROADNAX'S WAIVER OF HIS RIGHT TO TESTIFY

Broadnax argues that his decision not to testify was based on inaccurate advice from his attorney. Broadnax expressly waived his right to testify on the record at trial. Broadnax never challenged the validity of his waiver in the trial court. Therefore, this issue is unpreserved. To the extent Broadnax argues that his decision not to testify was the result of ineffective assistance of counsel, he did not preserve this claim, so "our review is limited to errors apparent on the record." See *Matuszak*, 263 Mich App at 48.

In an affidavit submitted in support of his Standard 4 brief, Broadnax asserts that his decision not to testify was based on counsel's inaccurate advice that the prosecution would seek to introduce evidence of his prior criminal sexual conduct case, which would enhance the likelihood of his conviction, and that he would receive a minimum sentence of 25 years if convicted. First, with respect to the admissibility of the prior charged sexual offense, the record does not support Broadnax's claim that counsel gave inaccurate advice. Although Broadnax questions whether any ruling allowing "other acts" evidence under MRE 404(b)(1) would have been proper, the trial court denied the prosecution's initial request to introduce this evidence. Accordingly, the only inquiry is whether Broadnax's decision not to testify was based on sound advice from counsel. Because the trial court agreed to revisit the admissibility of the prior sexual charged offense if Broadnax chose to testify, it was not objectively unreasonable for counsel to advise Broadnax of the risk that the prosecution would seek to offer this evidence against him if he did testify.

Broadnax also again argues that his decision to testify was based on counsel's inaccurate advice that he was facing a minimum term of 25 years if convicted. However, it is not apparent from the record that Broadnax's decision to testify was based on counsel's advice about a potential sentence if convicted. Regardless, as explained earlier, even though Broadnax was not subject to a *mandatory* minimum sentence of 25 years, he was still subject to a sentence enhancement as a fourth-offense habitual offender. That status still exposed him to a minimum sentence of 25 years or more, which was a distinct possibility considering that the high end of the sentencing guidelines range was 570 months. Under these circumstances, Broadnax has not established that any advice about the possibility of a 25-year sentence upon conviction was plain error or a reasonable probability that any misunderstanding regarding the sentence enhancement affected his decision not to testify.

## 4. PROSECUTORIAL MISCONDUCT

Broadnax argues that the prosecutor engaged in misconduct by initially charging him as a "super" habitual offender under MCL 769.12(1)(a). As discussed previously, the prosecutor agreed at sentencing that Broadnax was not subject to this penalty provision, and Broadnax has not established that any misunderstanding over the applicability of MCL 769.12(1)(a) affected his decision to testify.

Broadnax also argues that the prosecutor engaged in misconduct during her closing argument by making statements of fact that were not supported by the record. As discussed earlier, we are satisfied from our review of the record that the prosecutor's challenged remarks were supported by the evidence and reasonable inferences arising from the evidence. Broadnax has not established that the prosecutor's conduct was improper.

## 5. THE TRIAL COURT'S RULINGS

Broadnax argues that he is entitled to relief because of the trial court's erroneous rulings. Broadnax again challenges the trial court's decision to sentence him as a fourth-offense habitual offender. Broadnax argues that he was not subject to a 25-year mandatory minimum sentence under MCL 769.12(1)(a). However, he does not dispute that he was timely charged with being a fourth-offense habitual offender under MCL 769.12, and removal of the possibility of a mandatory 25-year minimum sentence did not affect Broadnax's status as an habitual offender subject to sentence enhancement under MCL 769.12(1)(b). Accordingly, Broadnax is not entitled to relief on this issue.

Broadnax also argues that the trial court erred by admitting evidence of his prior sexual offense under MRE 404(b)(1). As explained earlier, however, the trial court did not rule that this evidence was admissible, and it reserved ruling on the admissibility of the evidence if Broadnax chose to testify and claim that his sexual contact with the victim was consensual. Because Broadnax did not testify, the trial court did not have occasion to revisit its decision. Therefore, Broadnax has not established any error with respect to this issue.

We affirm.

/s/ Deborah A. Servitto
/s/ Jane E. Markey
/s/ Peter D. O'Connell